619 A.2d 1054

OFFICE OF DISCIPLINARY COUNSEL, Petitioner,

v.

Gregory G. HOLSTON, Respondent.

Supreme Court of Pennsylvania.

Argued Oct. 22, 1992.

Decided Jan. 25, 1993.

Samuel C. Stretton, West Chester, for respondent.

Samuel D. Miller, III, Asst. Disciplinary Counsel, for petitioner.

Before NIX, C.J., and ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This Court, in response to the Report and Recommendations filed in this matter on December 19, 1990, by the Disciplinary Board of the Supreme Court of Pennsylvania

(Board) issued a Rule to Show Cause why Gregory G. Holston (Respondent) should not be disbarred from the practice of law in this Commonwealth. Briefs were filed in this matter by the Respondent and the Office of Disciplinary Counsel and the parties were afforded the opportunity to argue orally before this Court. Our review of the entire record submitted to us by the Board, and the briefs submitted and considering the arguments made in open court, we conclude, for the reasons set forth below, that the Rule to Show Cause be made absolute and that Respondent be disbarred from the practice of law in this Commonwealth.

This matter was begun on November 22, 1989, upon Petition for Discipline filed by the Office of Disciplinary Counsel with the Board. The petition alleged that Respondent had violated various Rules of Professional Conduct in the course of handling a divorce matter. The Board referred the petition to a Hearing Committee, which held hearings and on June 13, 1990, filed its Report finding that Respondent had, in fact, violated the Rules of Professional Conduct and recommended that Respondent be suspended from the practice of law for six months.

The basic facts found by the Hearing Committee, which are admitted to by Respondent, are that he was admitted to the practice of law in this Commonwealth on May 5, 1986. He was retained by Richard Wofford of Philadelphia to represent him in a divorce and, on November 5, 1987, Respondent filed a Complaint in Divorce on Mr. Wofford's behalf in the Court of Common Pleas of Philadelphia County, Family Division. Respondent's initial attempt to serve the Complaint on Mrs. Wofford through the Sheriff's Office, resulted in a return of "Not Found".

As it later became apparent, Respondent did nothing else to serve the Defendant or to locate her whereabouts but some seven or eight months later when Mr. Wofford asked Respondent how his case was coming along, Respondent assured him that things were proceeding and in early August, 1988, Respondent informed his client that a decree in divorce had been granted.

On August 5, 1988, Respondent mailed a document to Mr. Wofford. The document purported to be a Decree in Divorce dated July 16, 1988, and carried the signed name of the Honorable Alex Bonavitacola, Judge of the Court of Common Pleas of Philadelphia County, along with a certificate purporting to verify the accuracy of the Court Decree.

On November 14, 1988, Respondent filed a petition to amend the complaint in divorce and a petition for special service by ordinary mail and on November 29, 1988, a hearing was held before Judge Bonavitacola on the two petitions and at this time the Court brought to Respondent's attention the decree dated July 16, 1988, and asked Respondent to tell him where he had gotten it.[1]

In response to this direct question, Respondent lied and said that he did not know how he got the document or who prepared the order and certification. Shortly thereafter, Respondent met with Attorney Samuel C. Stretton, who advised him that his conduct in this matter was improper and that he should reveal to Judge Bonavitacola that he was responsible for forging the name of the judge to the decree he sent to Mr. Wofford. Respondent did so and, throughout these proceedings, he has admitted his wrongful conduct and has shown his remorse for having forged a court order and for lying to a court of law.

Respondent filed exceptions to the Report on June 21, 1990, asking that he receive a public censure in lieu of a suspension and the Office of Disciplinary Counsel filed its own request with the Board asking that Respondent be suspended from the practice of law for two years.

The Board adopted the findings of fact as found by the Hearing Committee and concluded, as a matter of law, that Respondent had violated the following Rules of Professional Conduct:

a) RPC 1.1—which requires an attorney to provide competent representation to a client;

---

1. It is not shown in the record how this decree came to the attention of the court.

b) RPC 1.3—which requires an attorney to act with reasonable diligence and promptness in representing a client;

c) RPC 1.4(a)—which requires an attorney to keep a client informed of the status of a matter and promptly comply with reasonable requests for information;

d) RPC 3.2—which requires an attorney to make reasonable efforts to expedite litigation consistent with the interests of the client;

e) RPC 3.3(a)(1)—which prohibits an attorney from knowingly making a false statement of material fact or law to a tribunal; and

f) RPC 8.4(c)—which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

In recommending discipline for these violations the Board took into consideration, Respondent's age, reputation in the community, and the fact that he admitted his misconduct and apologized for his behavior and concluded that a one year suspension would be appropriate to protect the public and ensure the integrity of the Bar.

Our review in attorney disciplinary matters, of course, is *de novo*, and hence we are not bound by the findings of either the Hearing Committee or the Disciplinary Board although we may be enlightened by the decisions of those triers of fact who had the opportunity to observe the demeanor of the witnesses during their testimony. *Disciplinary Counsel v. Shorall*, 527 Pa. 413, 592 A.2d 1285 (1991); *Office of Disciplinary Counsel v. Stern*, 515 Pa. 68, 526 A.2d 1180 (1987); *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986).

Our independent review of the record before us and all the facts therein, easily allow us to conclude that there is uncontradicted evidence which is sufficient to establish that the Respondent knowingly forged a court order and certificate and that upon being questioned on the origins of the document lied to a judicial authority. This conduct alone is more than adequate to establish a violation of Disciplinary Rules 3.3(a)(1) (which prohibits an attorney from knowingly making a false

statement of material fact or law to a tribunal), and 8.4(c) (which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

Respondent's illegal conduct in forging a court document involves moral turpitude, was prejudicial to the administration of justice, and adversely affects his fitness to practice law. We have defined moral turpitude as "anything done knowingly contrary to justice, honesty, principle, or good morals" (see *Office of Disciplinary Counsel v. Simon*, 510 Pa. 312, 507 A.2d 1215 (1986)), and there can be little room for argument that the misrepresentation involved in forging a court document involves deceit and dishonesty of the kind included within the scope of our definition of moral turpitude.

Respondent's impeding the discovery of the truth concerning the forgery by lying to the court is both contrary and prejudicial to the administration of justice and also adversely reflects on his fitness to practice law. We have already indicated that we strongly condemn a lack of veracity to judicial authorities because such conduct undermines the integrity of the very process that an attorney swears to uphold. In *Montgomery County Bar Association v. Hecht*, 456 Pa. 13, 317 A.2d 597 (1974), we stated, "False swearing in a judicial proceeding is certainly an egregious species of dishonesty and is surely also patently prejudicial to the administration of justice." 456 Pa. at 21, 317 A.2d at 602.

In addition, Respondent neglected the divorce which Mr. Wofford had hired him to handle and in so doing violated Disciplinary Rules 3.2 (which requires an attorney to make reasonable efforts to expedite litigation consistent with the interests of the client), Rule 1.4(a) (which requires an attorney to keep a client informed of the status of a matter and promptly comply with reasonable requests for information), Rule 1.3 (which requires an attorney to act with reasonable diligence and promptness in representing a client) and Rule 1.1 (which requires an attorney to provide competent representation to a client).

The Hearing Committee and the Board in this case found violations of all these Disciplinary Rules and we are satisfied to adopt their factual findings and conclusions concerning the violations to the Disciplinary Rules as our own and the only matter remaining for our consideration is the appropriate discipline to be imposed.

In *Office of Disciplinary Counsel v. Grigsby*, 493 Pa. 194, 425 A.2d 730 (1981), we noted that the purpose of the Code of Professional Responsibility and the Rules of Disciplinary Enforcement is to protect the public, the profession, and the courts. Whenever an attorney is dishonest, that purpose is served by disbarment. 493 Pa. at 201, 425 A.2d at 733.

Respondent's conduct demonstrates a callous disregard for the very integrity of the judicial process and calls for the most severe sanction. In an attempt to diminish the gravity of his misconduct and lessen the consequences stemming from his actions, Respondent argues in mitigation that he was under extreme pressure in his personal life, that his wife was pregnant at the time and they were financially insecure; that once he realized his error he admitted his misconduct to Judge Bonavitacola and is remorseful for his actions; that he successfully completed the divorce for Mr. Wofford and refunded the fee he had been initially given and that he is very active in church and community affairs.

While all these factors are to be taken into consideration they cannot mitigate offenses which we have considered hitherto to be reprehensible and of the most egregious nature. *In re: Oxman*, 496 Pa. 534, 437 A.2d 1169 (1981); *Office of Disciplinary Counsel v. Campbell*, 463 Pa. 472, 345 A.2d 616 (1975); *Montgomery County Bar Association v. Hecht*, 456 Pa. 13, 317 A.2d 597 (1974):

False swearing in a judicial proceeding is certainly an egregious species of dishonesty and is surely also patently prejudicial to the administration of justice. This is doubly so when it is a lawyer who is the perjurer.

In the footnote following this passage we quoted a speech given by Daniel Webster to the Charleston, South Carolina Bar on May 10, 1847, where he astutely comments:

Tell me a man is dishonest, and I will answer he is no lawyer. He cannot be, because he is careless and reckless of justice; the law is not in his heart, is not the standard and rule of his conduct.

We have likened false swearing in the nature of a crime of *crimen falsi*, since it involves a falsehood which injuriously affects the administration of public justice and, therefore, is an infamous offense. *In re: Gottesfeld*, 245 Pa. 314, 91 A. 494 (1914). The same can be said of forgery which has always been understood as an attack upon the state and, therefore, was originally prosecuted as treason. See, Toll, Pennsylvania Crimes Code Annotated, Comment to Section 4101, at page 461.

Respondent has acted dishonestly and has demonstrated his unfitness to continue practicing law. Truth is the cornerstone of the judicial system and a license to practice law requires allegiance and fidelity to truth. Respondent's lying to the court and dishonesty in forging a court order are the antithesis of these requirements. Accordingly, we deem disbarment to be the appropriate remedy in this case and order that the Rule to Show Cause Why Respondent Should Not Be Disbarred be made Absolute. Gregory G. Holston, is disbarred from the practice of law within the Commonwealth of Pennsylvania. It is further ordered that he shall comply with the provisions of Rule 217, Pa.R.D.E. Respondent shall also pay costs, if any, to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

LARSEN and FLAHERTY, JJ., did not participate in the consideration or decision of this matter.

ZAPPALA, J., did not participate in the decision of this matter.