**Office of Disciplinary Counsel v. Raney**

Disciplinary Board Docket No. 22 D.B. 2004.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SAIDIS, *Member,* January 21, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On February 11, 2004, Office of Disciplinary Counsel filed a petition for discipline against Brian P. Raney, respondent. The petition charged respondent with violation of the Rules of Professional Conduct and Rules of Disciplinary Enforcement arising out of allegations that he engaged in the unauthorized practice of law and made false statements to a tribunal. Respondent did not file an answer to petition for discipline.

A pre-hearing conference was held on May 10, 2004, before Martin N. Lisman, Esquire, member of Hearing Committee 1.17. Respondent did not appear at the conference.

A disciplinary hearing was held on June 10, 2004, before Hearing Committee 1.17, comprised of Chair Gilbert J. Scutti, Esquire, and Members Heather Gallagher Tucker, Esquire and Martin N. Lisman, Esquire. Respondent did not appear. Respondent was personally served with notice of the date and time of the disciplinary hearing.

The Hearing Committee filed a report on September 29, 2004, finding that respondent violated the rules charged in the petition for discipline and recommending that he be disbarred.

No briefs on exceptions were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of November 17, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania, is invested, pursuant to Pa.R.D.E. 207, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement.

(2) Respondent, Brian P. Raney, was born in 1971 and was admitted to practice law in Pennsylvania in 2001. He does not maintain an office for the practice of law in the Commonwealth of Pennsylvania. He is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no prior history of discipline.

(4) On July 23, 2002, respondent filed with the Disciplinary Board of the Supreme Court of Pennsylvania his 2002-2003 Attorney's Annual Fee form, in which he requested to transfer to inactive status and cease the practice of law in Pennsylvania, and accordingly, was transferred to inactive status effective July 1, 2002.

(5) On May 10, 2002, respondent filed with the Virginia Board of Law Examiners (VABLE) a sworn application for re-examination for the July 2002 bar examination.

(6) In the sworn supplemental questionnaire, respondent answered "no" to the following questions:

(a) In response to question 2(C)—Have you permitted a business, trade or professional license to expire?

(b) In response to question 3—Have you been disqualified from practicing law?

(c) In response to question 5—Have there been any charges filed, proceedings initiated or complaints made involving allegations that you have committed any act which may constitute the unauthorized practice of law?

(d) In response to 15(ii)—he stated, "I hereby affirm under oath that none of the preceding questions apply to me and I submitted my 'Character and fitness questionnaire' to the Virginia Board of Bar Examiners on the date set out above and that all information contained was true and complete."

(7) Respondent did not advise the VABLE of his transfer to inactive status in Pennsylvania prior to the bar examination which he took on July 30-31, 2002.

(8) Respondent did not pass the July 2002 Virginia Bar examination.

(9) On December 11, 2002, respondent filed with the VABLE a sworn application for re-examination for the February 2003 bar examination.

(10) Respondent did not append a certificate of good standing, as required.

(11) Respondent acknowledged that he was required to notify the VABLE in writing if any answer on his application changed prior to admission to the bar.

(12) Respondent submitted a sworn supplemental questionnaire in which he responded as he had in the May 2002 questionnaire, as set forth above.

(13) By notice dated January 22, 2003, the VABLE advised respondent of the requirement that he supply a certificate of good standing from the Supreme Court of Pennsylvania.

(14) By letter dated February 6, 2003, respondent advised the VABLE that he was unable to obtain a certificate of good standing in Pennsylvania because he had been on inactive status since July 2002.

(15) Respondent subsequently supplied the VABLE with a certification of disciplinary history from Chief Disciplinary Counsel.

(16) Respondent did not pass the February 2003 Virginia Bar examination.

(17) On May 5, 2003, respondent filed with the VABLE an application for re-examination for the July 2003 bar examination and a supplemental questionnaire, in which he responded as he had to the May 2002 questionnaire, as set forth above.

(18) On or about June 5, 2003, respondent signed his 2003-2004 Pennsylvania fee form, which he subsequently filed with the board, in which he listed as his residence and office addresses: 1440 Cool Spring Way, Virginia Beach, VA 23464, and requested active status for the period July 1, 2003 to June 30, 2004.

(19) Respondent stated on the fee form that he was covered by a professional liability insurance carrier named Jamison Special Risk Inc. This was false, as he was not a named insured or listed employee under the referenced policy.

(20) Respondent stated that he was engaged in the private practice of law, but he did not state the name of the firm, which was Titus Law Group, located at 575 Lynnhaven Parkway, Suite 101, Virginia Beach, VA 23452.

(21) On June 25, 2003, the Titus Law Group filed in Virginia Beach Circuit Court a notice of hearing for June 20[sic] 2003, in the matter of *In re: Estate of Ruby B. Swanson,* Chancery no. CH03-605, on behalf of James Blaine, on which respondent's name appears in the caption as "special counsel," along with the names of two attorneys from the Titus Law Group, Kristina M. Cardwell and Stephen M. Gunther.

(22) Respondent did not at any time file a motion to appear in the *Swanson* matter pro hac vice, as required by Va. Code Ann. §54.1-3900.

(23) At the time the Titus Law Group filed the pleading, respondent:

(a) had been admitted to practice in Pennsylvania for two years and was on inactive status;

(b) was not admitted to practice in any jurisdiction other than Pennsylvania;

(c) did not meet requirements to waive into the Virginia Bar because he had not been engaged in the active practice of law in Pennsylvania for five years, as required by Rules of the Supreme Court of Virginia, Rule 1A:1 and the court's guidelines with respect thereto.

(d) was eligible for admission to the Virginia Bar only if he passed the Virginia Bar examination and fulfilled all other requirements for admission; and

(e) was not eligible to apply for admission pro hac vice in Virginia under the Rules of the Supreme Court of Virginia, Rule 1A:4, which has a reciprocity provision, because an attorney admitted to the Virginia Bar but on inactive status would not be eligible for pro hac vice admission in Pennsylvania under Pa.B.A.R. 301(a).

(24) On June 27, 2003, respondent appeared in Circuit Court before the Honorable H. Thomas Padrick Jr., in the *Swanson* estate matter.

(25) Respondent made misleading or materially false representations and/or admissions as to his eligibility to practice in Virginia courts.

(26) These statements included the following:

(a) Respondent stated he was licensed in Pennsylvania;

(b) Respondent stated he was in "the process" of getting qualified in Virginia;

(c) Respondent stated that he could appear in court pursuant to Rule 1:A(4) of the Virginia Court Rules;

(d) Respondent stated the only thing he could not do was sign documents;

(e) Respondent stated he had been practicing law for five years;

(f) Respondent stated he was just under the five-year Virginia waive-in rule and was trying to waive into Virginia;

(g) Respondent stated he was admitted to practice law in Pennsylvania in 2000.

(27) Respondent knew that the foregoing representations were materially false and misleading in that:

(a) Respondent was on inactive status in Pennsylvania and his restoration to active status would not be effective until three days after the hearing;

(b) Respondent was scheduled to take the Virginia Bar examination and had no guarantee of passing;

(c) Respondent was admitted in Pennsylvania in 2001 and at the time of the hearing was admitted to the Pennsylvania Bar for two years;

(d) Respondent was not eligible for reciprocal admission or admission by waiver in Virginia and had not applied for such admission; and

(e) Under Virginia Court Rule 1:A (4), respondent was not eligible to appear in court without a supervising Virginia lawyer.

(28) Judge Padrick issued a rule to show cause why sanction should not be entered against respondent and Titus Law Group attorneys, and scheduled a hearing for July 3, 2003.

(29) On July 1, 2003, Attorney Kristina Cardwell filed a motion for leave to allow Brian P. Raney to practice pro hac vice, in which she stated that respondent "is in

the process of obtaining his license to practice law in the Commonwealth of Virginia."

(30) That representation was misleading in that respondent had not retaken the Virginia Bar examination. Respondent did not clarify or correct the information contained in the motion.

(31) By letter to Judge Padrick dated July 1, 2003, respondent apologized for his failure to file a timely and appropriate motion for pro hac vice admission, and forwarded a copy of the motion filed by Attorney Cardwell.

(32) By letter dated July 2, 2003, Judge Padrick advised respondent that he was removing the show cause matter from the docket, reporting the incident to the Virginia State Bar and deferring action on respondent's pro hac vice motion.

(33) By letter dated July 8, 2003, the Committee on Unauthorized Practice of Law of the Virginia State Bar (CUPL) notified respondent of allegations that he had engaged in the unauthorized practice of law in the *Swanson* matter.

(34) By letter to the VABLE dated July 10, 2003, respondent asked to transfer his July 2003 bar examination application to the February 2004 examination.

(35) By letter dated July 8, 2003, to the Virginia State Bar, copied to respondent and the Pennsylvania State Bar Association, Richard H. Roston, Esquire, opposing attorney in the *Swanson* matter, brought the transcript of the *Swanson* proceeding to the attention of bar authorities.

(36) By letter dated August 12, 2003, to the Virginia State CUPL, copied to respondent, Judge Padrick forwarded the transcript of the *Swanson* proceedings.

(37) By letter to CUPL dated August 12, 2003, copied to respondent, respondent's counsel filed a response to the July 8 notice, based upon information supplied by respondent and with content authorized by respondent.

(38) The August 12 letter stated that respondent filed his application for admission to the Virginia State Bar by examination in May 2003 and is scheduled to take the bar examination in February 2004.

(39) Respondent did not promptly reveal to the VABLE the proceedings to sanction him for the unauthorized practice of law and the complaints to bar authorities.

(40) By letter dated September 9, 2003, Office of Disciplinary Counsel, petitioner herein, notified respondent of allegations of professional misconduct relating to the *Swanson* matter.

(41) Respondent failed to bring the Pennsylvania disciplinary proceeding to the attention of the VABLE until December 2003.

(42) Respondent was personally served with the petition for discipline on February 24, 2004.

(43) Respondent was personally served with notice of the disciplinary hearing.

(44) Respondent did not appear for the disciplinary hearing held on June 10, 2004.

### III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 3.3(a)(1)—A lawyer shall not knowingly make a false statement of material fact or law to a tribunal.

(2) R.P.C. 5.5(b)—A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction.

(3) R.P.C. 8.1(a)—A lawyer is subject to discipline if the lawyer has made a materially false statement in, or if the lawyer has deliberately failed to disclose a material fact requested in connection with, the lawyer's application for admission to the bar or any disciplinary matter.

(4) R.P.C. 8.4(a)—It is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or to do so through the acts of another.

(5) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(6) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(7) Pa.R.D.E. 203(b)(3)—Willful violation of any other provision of the Enforcement Rules is grounds for discipline via Pa.R.D.E. 219(d)(3), which states that every person who has filed an annual attorney registration statement shall notify the Administrative Office in writing of any change in the information previously submitted within 30 days after such change.

## IV. DISCUSSION

Respondent is before this board on charges that he engaged in the unauthorized practice of law in Virginia when he was not admitted to practice in that jurisdiction and while on inactive status in Pennsylvania. Respon-

dent is further charged with making materially false and misleading statements to the court.

On June 27, 2003, respondent appeared as counsel for a party in the Virginia Beach Circuit Court in the matter of *In re Estate of Ruby B. Swanson.* Respondent was not a member of the Virginia Bar and did not apply for pro hac vice admission. Pursuant to Va. Code Ann. §54.1-3900, an attorney "authorized and practicing as counsel" in another jurisdiction "may, for the purpose of attending to any case he may occasionally have in association with a practicing attorney of this Commonwealth, practice in the courts of this Commonwealth." Respondent was on inactive status in Pennsylvania, the only jurisdiction where he was admitted, so he was not permitted to petition for admission under this section of the Virginia Code, as Virginia has reciprocity with Pennsylvania regarding inactive attorneys. Furthermore, even if respondent had been active in Pennsylvania, respondent had not even filed an application for admission in Virginia, pursuant to the Virginia Code, although respondent admitted to the court that he knew he was required to do so and claimed he kept such a motion in his briefcase.

By participating in a Virginia hearing without meeting the requirements for pro hac vice admission, respondent engaged in the unauthorized practice of law, in violation of R.P.C. 5.5(b). His conduct also prejudiced the administration of justice, in violation of R.P.C. 8.4(d), as it required the judge to interrupt the *Swanson* hearing and direct further proceedings with regard to respondent's ability to practice law in Virginia.

During the course of the *Swanson* hearing, as Judge Padrick commenced his questioning of respondent re-

garding his status as "special counsel," as respondent was listed in the pleadings, respondent engaged in materially misleading and outright false statements to the tribunal. Respondent stated he was admitted in Pennsylvania, but failed to inform the court he was on inactive status in that jurisdiction. Respondent informed the court that the only thing he was not permitted to do under Virginia law was to sign documents. This was a misstatement of the law. Respondent intimated to the court that he was in the process of gaining admission by waiver. However, respondent was not a candidate for admission by waiver into Virginia, which permits reciprocal admission if the attorney has been licensed to practice law in the jurisdiction of admission for at least five years. Va. Sup.Ct.R. 1A:1. Respondent had not been admitted to Pennsylvania for five years, though he explicitly told the court that he had been practicing for five years. Respondent quickly backed off that false statement by saying he was "just under the five years rule." Again, this was not true. Respondent was admitted in Pennsylvania in 2001. The court proceeding in Virginia took place in June 2003. Upon direct questioning by the court, respondent continued to misinform the court by telling Judge Padrick he was admitted in 2000. Respondent never did tell the court the true date of his admission to Pennsylvania. Subsequently, respondent wrote a letter of apology to Judge Padrick for inconveniencing the court by his actions.

These facts demonstrate that respondent knowingly made false statements to a tribunal, in violation of R.P.C. 3.3(a)(1); engaged in dishonest conduct, in violation of R.P.C. 8.4(c); and engaged in conduct prejudicial to the administration of justice, in violation of R.P.C. 8.4(d).

Respondent made material misrepresentations in connection with his application to the Virginia Bar. Prior to the July 2002 and February 2003 Virginia Bar examinations, respondent failed to inform the bar authorities in that jurisdiction of his transfer to inactive status in Pennsylvania. Even though respondent voluntarily assumed inactive status in Pennsylvania, and such status was not due to respondent's deficiency in any administrative obligation in Pennsylvania, he still had the responsibility to inform Virginia of his status in other jurisdictions. It was only after the Virginia Bar authorities requested that respondent supply a certificate of good standing from the Supreme Court of Pennsylvania that he revealed his inactive status.

After the *Swanson* hearing took place when respondent made his false statements to the tribunal, Judge Padrick and the opposing counsel in the matter filed complaints with the Virginia Committee on Unauthorized Practice of Law. Respondent was duly notified of the allegations and given an opportunity to respond. Respondent obtained counsel, who filed a response to the committee's notice and made a misstatement regarding when respondent was scheduled to take the Virginia Bar examination. The response was misleading in that it implied respondent's first bar application was filed in May 2003, and failed to reveal that respondent had taken and failed the Virginia Bar examination on previous occasions. Respondent failed to correct this misleading information.

Respondent also made other more minor representations in his 2003-2004 attorney registration form by stating that he was covered by professional liability insur-

ance and by failing to list his employment with the Titus Law Group in Virginia Beach. This misconduct violated R.P.C. 8.1(a), making a materially false statement in, or failing to disclose a material fact requested in connection with an application for admission to the bar or any disciplinary matter; R.P.C. 8.4(a), prohibiting violation of the Rules of Professional Conduct through the acts of another; and R.P.C. 8.4(c) prohibiting dishonest conduct. He also violated Pa.R.D.E. 203(b) via Pa.R.D.E. 219(d)(3) because he did not promptly update his attorney registration information.

Respondent's misconduct is extremely serious and warrants significant discipline. The act of making misrepresentations to a court has been strongly condemned by the Supreme Court. In the matter of *Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 619 A.2d 1054 (1993), the attorney attempted to conceal his inaction in a divorce matter by presenting the client with a fake divorce decree purportedly signed by a judge and then lying about the document to the very judge whose signature he had forged. The Supreme Court found that Holston's conduct undermined the integrity of the process that he was sworn to uphold. The court did consider mitigation, but still disbarred respondent due to the reprehensible nature of his actions.

Respondent's conduct in the instant matter may be distinguished in such a way that the board believes disbarment is not warranted. Respondent's false statements did not have to do with his client's matter, but with his own status as an attorney. Respondent was not attempting to further his client's matter by proffering a false document with the forged signature of a judge. Review

of the transcript of the Virginia court hearing shows a sequence of questions whereby respondent gets into deeper trouble with the court as he foolishly attempts to avoid stating the reality of his inactive admission and the year he was admitted to Pennsylvania. There is no question that respondent's conduct was dishonest. He was obligated to answer the judge's questions truthfully and he did not. The board does not find evidence that respondent entered the courtroom with the knowing intent to make false statements to the judge. In comparison, the attorney in *Holston* went to court with just such intent, that being to tell a judge that a fake divorce decree was the real thing.

Respondent's conduct is compounded by his unauthorized practice of law, his failure to apprise the Virginia Bar authorities of his inactive status in Pennsylvania, and his misstatements in his Pennsylvania attorney registration form. Respondent's failure to appear at his disciplinary hearing to explain his motives for these actions also aggravates his misconduct. This demonstrates a lack of interest in defending his right to practice. It also stands as a lost opportunity for respondent to express any feelings of remorse he may have had regarding his actions.

Keeping in mind that the primary purpose of the disciplinary system is to assess lawyer fitness and protect the public, *Office of Disciplinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186 (1994), a five-year suspension accomplishes the goal. Respondent was admitted to practice in Pennsylvania in 2001. The false statements to the tribunal, if viewed as a panic reaction by a young, inexperienced attorney, might be slightly mitigated. However, the respondent thereafter acts like a "deer caught in

the headlights," who starts, stops and then charges full-bore, antlers glistening, head down into an oncoming tractor-trailer. The ruins of the respondent's legal career are now scattered all over the interstate. The board is clearly troubled by the respondent's lack of participation, which would have permitted him to express his remorse and explain the web of lies. A five-year suspension, although perhaps compassionate, appears appropriate under the facts of the case.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the respondent, Brian P. Raney, be suspended from the practice of law for a period of five years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Nordenberg did not participate in the November 17, 2004 adjudication.

## ORDER

And now, April 6, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated January 21, 2005, it is hereby ordered that Brian P. Raney be and he is suspended from the bar of this Commonwealth for a period of five years, and he shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.